1   Krishna Reddy
    7968 SVL Box
2   Victorville, CA 92395
    Phone No.: (760) 962-9959
3   Fax No.: None
    ACalifornianNuance@gmail.com
4

5   Plaintiff, pro se

6

FILED

ADR

2011 NOV 21  P 3: 24

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. CAL. SAN JOSE

*Paid*
*NP*
(5)

E-filing

7                    **UNITED STATES DISTRICT COURT**

8            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9                        **[San Jose Division]**

10                    C V 1 1 - 0 5 6 3 2  PSG

11                              Civil Case No.:

12   KRISHNA REDDY,                    )   COMPLAINT FOR DAMAGES, FOR
                                       )   DECLARATORY RELIEF, AND FOR
13            Plaintiff,               )   INJUNCTIVE RELIEF, FOR:
                                       )
14       vs.                           )   1) DISCRIMINATORY EMPLOYMENT
                                       )      PRACTICES, HARASSMENT, AND
15                                     )      HOSTILE WORK ENVIRONMENT;
                                       )   2) TORTIOUS WRONGFUL
16   NUANCE COMMUNICATIONS,            )      TERMINATION IN VIOLATION OF
     INC.;                             )      PUBLIC POLICY;
17   FOCUS INFOMATICS, INC.;           )   3) BREACH OF CONTRACT;
     PAUL RICCI;                       )   4) BREACH OF THE COVENANT OF
18   JEANNE NAUMAN;                    )      GOOD FAITH AND FAIR DEALING;
     CATHERINE DORCHUCK;               )   5) PROMISSORY ESTOPPEL;
19   RICHARD NARDONE;                  )   6) FRAUD, DECEIT, AND CIVIL
     JOHN HAGEN;                       )      CONSPIRACY;
20   MATTHEW LIPTAK;                   )   7) INTENTIONAL AND NEGLIGENT
     DIANE COFFEY; and                 )      INTERFERENCE WITH CONTRACT
21   DOES 1 through 100, inclusive,    )      AND WITH PROSPECTIVE
     with the individual named defendants )   ECONOMIC ADVANTAGE;
22   being sued both individually and also )  8) VIOLATION OF CALIFORNIA
     as the agents of the defendants   )      LABOR CODE SECTIONS 1050 AND
23   FOCUS INFOMATICS, INC. and        )      1052;
     NUANCE COMMUNICATIONS,            )   9) INTENTIONAL AND NEGLIGENT
24   INC.,                             )      INFLICTION OF EMOTIONAL
                                       )      DISTRESS; and
25            Defendants.              )   10) UNCONSTITUTIONAL
                                       )      OFFSHORING OF CONFIDENTIAL
26                                     )      MEDICAL INFORMATION OF THE
                                       )      CITIZENS OF THE UNITED
27                                     )      STATES.
                                       )
28   ─────────────────────────         )      [Demand for Jury Trial]

                                       1

I, Krishna Reddy, the Plaintiff, for a Complaint against the Defendants, state and allege based on my belief, as follows:

## JURISDICTION AND VENUE

1. The Court has original jurisdiction over this action pursuant to 28 USCA Section 1331, as this civil action arises under the laws of the United States. I am alleging a violation of my civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 USC Section 1981, and 42 USC Section 1985.

2. Venue herein is proper under 28 USCA Section 1391(b), as the events that gave rise to the claims took place in California, and defendant NUANCE COMMUNICATIONS, INC. is registered with the California Secretary of State, and also can be found in Sunnyvale, California.

3. This Court also has supplemental jurisdiction over the California State law claims and the individual noncorporate defendants in their individual capacity pursuant to 28 USC Section 1367, as the claims against each of them are related to the claims upon which the original jurisdiction is based.

4. The amount in controversy exceeds $75,000.00, exclusive of the interest and the costs.

## PARTIES

5. I am and was at all times mentioned herein, a Citizen of the United States, and a resident of the State of California.

6. Defendant NUANCE COMMUNICATIONS, INC. ("Nuance") is a Delaware Corporation, with its corporate headquarters in Burlington, Massachusetts, with offices in the States of California, Florida, New Jersey, and Washington, as well as outside the United States. Defendant can be found at 1198 East Arques Avenue, in Sunnyvale, California.

7. Defendant FOCUS INFOMATICS, INC. ("Focus Infomatics"), is a national transcription company, and is a subsidiary of defendant Nuance.

8. Defendant PAUL RICCI is the Chairman and Chief Executive Officer of Nuance.

9. Defendant JEANNE NAUMAN was the Professional Services Director for the Enterprise Implementation Services at Nuance.

10. Defendant CATHERINE DORCHUCK was the Acting Manager of Focus US Operations at Nuance.

11. Defendant RICHARD NARDONE was the Director of International Human Resources for Nuance.

12. Defendant JOHN HAGEN was the Director of Human Resources for Nuance.

13. Defendant MATTHEW LIPTAK was the Senior Director of Recruitment at Focus Infomatics and Nuance.

14. Defendant DIANE COFFEY was the Senior Human Resources Manager at Nuance.

15. I do not know the true names of defendants, DOES 1 through 100 inclusive, who are/were employees/agents of defendants Nuance and Focus Infomatics; therefore, I am suing them by those fictitious names. Once their identity is known, I will amend the Complaint to include their names.

16. I do not know the exact place of residence of each of the other individual defendants; probably the States of Massachusetts, Minnesota, Florida, among others.

17. Each of the individual defendants, in doing the things alleged in this Complaint, was acting within the course and scope of their employment with Nuance and Focus Infomatics, as well as individually for his/her own personal gain; therefore, each individual defendant is being sued in his/her official capacity as agent of Nuance and Focus Infomatics, as well as in his/her individual capacity. The liability is being sought to be imposed as both joint and several as to each defendant.

3

**STATEMENTS OF FACTS**

18.  The relevant facts are all within knowledge of the defendants from the various communications we have had during my employment at Focus Infomatics and Nuance.

19.  I am a woman of East Indian origin.  After graduating from my Medical School in India, I moved to the United States.  I have been working in the medical transcription business here in the United States, initially as a medical transcriptionist, and later on as a Quality Assurance Editor.

20.  Defendant Focus Infomatics is a medical transcription company.  It crosses State lines in operating its business.  It enters into contracts with hospitals, clinics, and doctors' offices located all over the United States for transcription of the dictated medical reports.  It then hires medical transcriptionists located all over the United States, as well as overseas, to transcribe the dictated reports into text, and it sends the completed reports back to its clients.  Nuance is involved in renting its transcription platforms and speech recognition platforms used to dictate and create medical reports to clients in the United States, and has those confidential medical reports of the United States Citizens processed overseas, and delivers the completed reports to its clients in the United States.

21.  In October 2007, I was hired as a "QC" in the "SWAT Team" of Focus Infomatics. On December 17, 2007, a co-worker, Ms. Donna Russell, was replaced by me as the Team Lead for the SWAT Team.  That Team Lead title was re-named as "Assistant Manager of SWAT" by the Manager of SWAT, Ms. Eve Myers.

22.  On March 4, 2008, we received an e-mail from Mr. Chris Blue, Senior Vice President of Sales & Operations at Focus Infomatics, that was forwarded to us by Ms. Lee Ann Offord, a nurse by profession, and "Quality Manager" at Focus Infomatics, regarding promotion of Lee Ann to "Manager of US Operations." That e-mail also included an "organizational chart", which showed two positions between the 10 Team Leaders and the Manager of U.S. Operations;

i.e., QA Manager and Assistant QA Manager. It was my understanding that the QA Manager is the same as the "Director of QA" position at other transcription companies. During one of the meetings that we had later on, Lee Ann announced that Eve Myers was offered her prior position of Director of QA/QA Manager.

23. Eve Myers later on started harassing me including name-calling, and I gave a complaint to Lee Ann, who confirmed that Ms. Eve Myers had been treating team members like "animals." Lee Ann then transferred me out of SWAT and made me a full-time "DSP-Qualifier" at Focus Infomatics, with a pay of $18.00 an hour, with my job description being auditing the reports typed by the transcriptionists and qualifying them for DSP (direct submission privileges) status so that the transcriptionists could submit their completed reports directly to the clients.

24. Because of Eve Myers' rude behavior, her employment was later terminated by Lee Ann. I spoke to Lee Ann on several occasions expressing my interest in a management position at Focus Infomatics, and she assured me a Team Lead position above the SWAT Manager position with a pay of $50,000/year.

25. Apparently Lee Ann was in the process of filling those 10 Team Leader positions that were on the organizational chart. Unfortunately, around June of 2008, Lee Ann's employment was terminated by Focus Infomatics and Nuance, apparently to make room for defendant Catherine Dorchuck, who was seated as the "Acting Manager of Focus Infomatics' US Operations."

26. Once I heard that the position of the "QA Manager" that was previously held by Ms. Lori Nonemaker, was open at Focus Infomatics, I wrote to defendant Matthew Liptak regarding that position, but was told that it was not open. At no time was I informed by Focus Infomatics or defendant Catherine Dorchuck, that the Team Leader positions were open. However, Ms. Edith Vargas, who, I believe, was hired by Focus Infomatics around 11/19/2007 as a SWAT team member, based on the information that I received as her Team Manager, which gives me

1    seniority of a little over a month over her here at Focus, was hired as Team Leader

2    on my account which I had been working on long before the SWAT team started

3    working on that, giving me more experience on that account than Edith Vargas

4    had. I had been working on another account too as a backup account when I ran

5    out of work on my primary account, before a co-worker, Ms. Kathy Barajas, was

6    assigned to that account as a Team Leader by Ms. Dorchuck.

7        27. Eventually, both Edith Vargas and Kathy Barajas started assigning me

8    their job functions, though my job title at Focus Infomatics continued to be a

9    "DSP-Qualifier", but I was paid only $18/hour while they were each paid $50,000

10   to $60,000/year by Focus Infomatics to complete the same work!

11       28. On October 8, 2008, Ms. Dorchuck wrote to me about my status at

12   Focus Infomatics, and I responded as soon as I received her e-mail. I gave her my

13   scheduled hours and days too, but apparently she called me at a time when I was

14   not home, and as soon as I received her message on my voice mail, I wrote to her.

15   But, she did not follow up on my phone call.

16       29. Ms. Dorchuck and Ms. Edith Vargas started overstaffing the accounts,

17   and as a result, I had to stay logged in for 13 hours to get 5 hours' worth of work

18   on my account, though under Fair Labor Standards Act, I was entitled to pay for

19   "waiting for work." I then notified Ms. Edith Vargas about the same, and also

20   contacted defendant Mr. Matthew Liptak in Human Resources and expressed my

21   concerns about discriminatory employment practices and violations of Fair Labor

22   Standards Act by Focus Infomatics, and also inquired about the "Director of QA"

23   position at Focus Infomatics.

24       30. In what seems to be a retaliation for complaining about the

25   discrimination issues to Human Resources, Ms. Dorchuck started harassing me

26   and created a hostile environment for me to work in. She gave me a memo

27   accusing me of "days worked not matching the schedule", though I did work my

28   scheduled hours. Though Ms. Dorchuck had time to make those false accusations

against me, she did not have time to call me and resolve the discrimination issues
that I raised in my e-mails to her.  Therefore, I contacted Mr. Liptak again, notified
him of the discriminatory promotions and wages, and the "no work" issues.  Mr.
Liptak told me that Ms. Dorchuck was "jealous" of me and that she felt that I was
a threat to her job at Nuance.  He gave me defendant Jeanne Nauman's name to
follow up on those issues.

31.  On 11/4/2008, Ms. Dorchuck called me, and she was extremely rude,
and created a very hostile environment for me to even communicate with her.  She
told me something to the effect that she and "her team" had brought around $300
millions in business to Nuance, and inquired me what I had brought to Nuance to
deserve a Team Lead position! I did not know that the Team Leaders at Focus
Infomatics actually "brought $300 millions in business to Nuance", nor that that
was what qualified each of them for a "Team Leader" position! Nor was I aware
that for a "Director of QA" or a "Team Leader" position, I needed to "bring
business of $300 millions to Nuance!"  From what I have witnessed in this
transcription industry, it is not unusual in the transcription industry for the married
executives of the transcription companies to have extramarital affairs with
employees of the transcription companies, and to promote those employees to
higher management positions though they were not qualified.  I have seen such
employees being led to believe by the executives that those employees owned the
company!  After I heard that statement from Ms. Dorchuck about "bringing $300
millions in business to Nuance", I googled her name for that business she
allegedly brought to Nuance, but found no article confirming that for a fact.  In
fact, google search revealed only one web page for Catherine Dorchuck, her self-
proclaimed profile at the website, <LinkedIn.com>.  Once I conduct discovery, I
probably will find out more about her "qualifications" that prompted Nuance to
replace Lee Ann Offord, a nurse, with Ms. Dorchuck, who did not seem to know
the basics of transcription or the public policy!

32. Ms. Dorchuck, then gave me different versions regarding filling of the Team Leader positions. One version was that she did give an ad for the open positions and that I was e-mailed that ad, which I never received.  I told her the same and requested her to forward me a copy of that e-mail with which she allegedly notified me regarding the open team leader positions, but I never received any e-mail to that effect from Ms. Dorchuck.  The second version that she gave was that those Team Leaders had "signed contracts" from Lee Ann and that I did not have one like them. It is not clear why I was not given such a "signed contract" by Lee Ann or Focus Infomatics, since Lee Ann told me that she was in fact talking to the Administration about a "management position" for me at Focus Infomatics!  As I told Ms. Dorchuck, oral promises were in fact made by Lee Ann to make me a Team Leader at an annual salary of $50,000. No reasonable explanation was offered by Ms. Dorchuck, as to why, in spite of being more qualified than any of the Team Leaders that she hired, I was not promoted to a Team Leader position with the same salary as her "team", i.e., $50,000 - $60,000/year, though my job duties are exactly the same as the Team Leaders. Ms. Dorchuck would not listen to anything that I was trying to say during that conversation we had, but was very rude, and she said she was going to go ahead and notify the Human Resources that I was "not listening to her" or something to that effect, when in fact, she was the one that was not listening to my complaints of discrimination and harassment.  As such negative comments by her about me would have serious consequences on my employment status at Focus Infomatics, at that point, I requested Ms. Dorchuck to allow me to speak to someone higher up, since I was not provided with any "chain-of-command" at Focus Infomatics by the Human Resources.  Ms. Dorchuck then arranged for a phone conference with defendant Jeanne Nauman, who allowed me to give a written complaint of the issues.  When inquired as to how she had heard of the Team Lead position, I was told by the Team Lead, Edith Vargas, that the Team Lead positions were never

1  advertised and that there were no e-mails sent out about the Team Lead positions

2  being open, and that it was "word of mouth" recruiting.

3      33.  On 11/5/2008, I submitted a complaint of discrimination and

4  harassment to Focus Infomatics/Nuance to Ms. Nauman.  On 11/12/2008, I had a

5  phone conference with defendants Jeanne Nauman and defendant Richard

6  Nardone regarding my complaint.  During that conference, Mr. Nardone asked me

7  why I thought I "should be notified of any openings at Focus Infomatics and

8  Nuance", thereby establishing the discriminatory hiring and promotion practices at

9  Nuance and Focus Infomatics, which indulge in "word of mouth" recruiting and

10  "nepotism."   Towards the end of that conference, I was told by Mr. Nardone that

11  Focus Infomatics/Nuance would notify me within a week of their decision

12  regarding my complaint.

13      34.  Ms. Dorchuck, though promised me on 11/4/2008 to hire me for the

14  next available team lead position, once one was available, she hired a co-worker

15  for that position instead of me, though I was more qualified than my co-worker.

16  When an auditor position with hourly wages was open, the defendants did not

17  advertise for that position.  Once another auditor position was open and I applied

18  for that, I was rejected for that position.  In the meantime, Ms. Dorchuck and her

19  friends started overstaffing the accounts so that I would run out of work, while

20  they were saving work for their friends.  Ms. Dorchuck and her friends also were

21  writing me up for auditing reports correctly, as they did not have enough

22  experience to find the errors in their own audits!  The harassment and hostile

23  environment continued at Focus Infomatics.

24      35.  It was not until 12/4/2008, that I received a letter from defendant Diane

25  Coffey, who, though had my original complaint on file, asked me to give again in

26  writing about the issues!  On January 22, 2009, I submitted a timely supplement to

27  my complaint updating the issues and notified Ms. Coffey regarding the QA

28  Manager position that was open at that time at Nuance which I had applied for.

36. On March 3, 2009, Ms. Coffey replied to my complaint with a letter backdated to February 20, 2009, stating that they did not find any evidence of discrimination or harassment towards me!  In that letter, she stated that my qualifications as an MD was not a job requirement for the Team Lead positions, though those positions require knowledge of medical terminology.  She said that my status at Focus Infomatics was a "QA, Sr. ITP" though the contract entered into by Focus Infomatics with me was for the position of "DSP Qualifier" which I had accepted, therefore, that contract was binding on Focus Infomatics and Nuance.  She also stated that as my title was not a "SWAT Executive" and the reason why the e-mail regarding the open Team Lead positions was not e-mailed to me!  She did not provide any evidence that the Team Lead positions were in fact, "posted!"  She said that they offered to me an auditor position, and that I rejected that.  What I was offered was a production-based auditor position, which was not an hourly position, but was a step-down from the hourly wages job I held.

37. On March 6, 2009, though requested one more time by me, Ms. Coffey did not provide me any evidence that the Team Lead positions were in fact, "posted!"  She also stated that the "QA Manager" position at Nuance was "cancelled!"  Though defendant Paul Ricci had the authority to undo the illegal activities of the other individual defendants, he chose not to do so, and thus ratified after the fact, the actions of each of the other defendants.

38. After 2 months, on May 7, 2009, apparently in retaliation for raising the issues of discrimination and harassment, though they gave ads for transcriptionists and QA Manager at the time for "new accounts", and though the defendants said that I was not included under the "SWAT Executive" team at Focus Infomatics, defendant Jeanne Nauman and defendant John Hagen laid me off effective the next day, i.e., May 8, 2009, without giving me the required 60-day period for the layoff, by including me in a group of "SWAT Executives" who were the targets for the layoff, though I had a pending escrow at the time.

39.  Apparently, defendants made my status at Focus Infomatics and Nuance, "not eligible for rehire!"  After my termination, I applied for a team lead position that was open at Focus Infomatics, and on 6/8/2009, I was rejected for that position without even an interview, by defendant Matthew Liptak, stating that they were "pursing other candidates."  I then applied for a team lead position that was advertised by Nuance, and on 7/1/2009, I was rejected for that position too without even an interview,  by defendant John Hagen, stating that they were "pursuing other candidates."

40.  I gave a timely complaint to the Equal Employment Opportunity Commission ("EEOC") about Nuance and its officers.  Under the work sharing agreements, EEOC shared my complaint with California's Department of Fair Employment and Housing ("DFEH").  DFEH deferred the processing of complaint to EEOC and gave me a right-to-sue letter.  EEOC gave me a right-to-sue letter on August 23, 2011 [see Exhibit 1, attached as pages 26 and 27 to this Complaint - right-to-sue letter from EEOC with the date mailed not legible, but the envelope was postmarked August 23, 2011].

41.  Under California law, the statute of limitations is tolled when a plaintiff is seeking other remedies such as with EEOC and DFEH.  As all the claims are based on the same nucleus of operative facts, the statute of limitations is tolled for all causes of action; therefore, this Complaint is timely as to all causes of action.

## CAUSES OF ACTION

I

## FIRST CAUSE OF ACTION

## DISCRIMINATORY EMPLOYMENT PRACTICES, HARASSMENT, AND HOSTILE WORK ENVIRONMENT

42.  The allegations set forth above in paragraphs 1 through 41 inclusive, are incorporated into this cause of action by reference as if set forth in full herein.

43. I am a woman of East Indian origin and belong to a protected class as defined by Title VII of the Civil Rights Act of 1964, as amended, and the laws of the State of California to include Fair Employment and Housing Act. Title VII of the federal law and California's Fair Employment and Housing Act protect people like me against any discrimination based on race, National origin, color, religion, age, among others. 42 USC Section 1981 protects me against discrimination based on race, National origin, and color. 42 USC Section 1985 makes conspiracies based on discrimination, actionable.

44. During my employment at Focus Infomatics and Nuance, I was discriminated in promotions and pay, and was made to perform the job functions of the Team Leaders at Nuance, with a pay that was only $18.00 hour, while the Team Leaders were being paid $50,000 to $60,000 a year. Defendant Ms. Dorchuck, who allegedly was "jealous" of me, made way for my layoff by saving all the work for her friends so that I do not have any work to complete, justifying my layoff! She created a very hostile environment for me to work at Focus Infomatics and Nuance. When inquired about the Team Leader position, I was subjected to harassment, insults, and demeaning comments by defendant Dorchuck. I was written up by defendant Dorchuck and her "team" for proofreading reports correctly. I was not allowed to compete for any open positions at Focus Infomatics or Nuance, though I was overqualified for each of those positions, but they were filled by word-of-mouth recruiting/nepotism. I was subjected to harassment and hostile work environment by Ms. Dorchuck, which were all ratified by the executive defendants. The defendants eventually terminated my employment for giving a Title VII complaint, under the guise of "layoff of SWAT Executives", though they acknowledged that I did not belong to the "SWAT team." My termination was discriminatory, unlawful, and was based apparently on my race, national origin, ancestry, and age. I was subjected to such a discriminatory treatment, harassment, and hostile environment, and eventually

termination while other persons not of the same ethnic or national origin or age were not so treated.  I was terminated of my employment for requesting the defendants' compliance with federal and state laws.  For the negligent hiring and supervision of its management employees who were unfit to hold management positions, liability could be imposed on Nuance and Focus Infomatics.  Retention of the tortfeasor employees by Focus Infomatics and Nuance is evidence of ratification after the fact by the employers, of the torts of their management employees, for which liability could be imposed on the employers.

45.  As a direct and proximate result of defendants' aforementioned actions against me, I have suffered loss of wages, benefits, and retirement plans, among others.  I have suffered damages in an amount presently unascertained, but to be shown according to proof at time of trial, in an amount within the jurisdictional limits of this court and believed to be not less than the sum of 25 million dollars.

46.  The wrongful conduct of defendants as set forth above was malicious, despicable, and oppressive and was intended by defendants to cause vexation, annoyance, and injury to me, was carried on by defendants with a willful and conscious disregard for my rights, and it is my belief that I am entitled to punitive and exemplary damages in an amount not less than the sum of 25 billion dollars.

Wherefore, I pray for relief as set forth below.

II

SECOND CAUSE OF ACTION

TORTIOUS WRONGFUL TERMINATION IN VIOLATION OF

PUBLIC POLICY

47.  I incorporate by reference paragraphs 1 through 46, inclusive, of this complaint as if fully set forth hereto.

48.  Pursuant to California's Code of Civil Procedure Sections 1895-1899, the law of the State of California includes the *common law* as well as the *Constitution* and the *codes*.  The termination of my employment was wrongful as it

13

1  was in violation of the public policy of the State of California as expressed both in

2  California's Government Code Section 12940(a) that specifically prohibits any

3  discrimination in compensation or in terms, conditions, or privileges of

4  employment, as well as under federal law, in that, my termination was in

5  retaliation for complaining about Title VII violations at Focus Infomatics and

6  Nuance, and requesting employer compliance with State and Federal laws.

7  Defendants' termination of my employment was in violation of the public policy.

8      49.  Though the defendants said that I was not a "SWAT Executive", reason

9  why I did not receive the alleged e-mails that were sent out regarding the open

10 Team Lead positions, they included me under the group of "SWAT Executives",

11 who were the intended targets for the layoff!  Since my status at the employers was

12 a "DSP Qualifier", the termination of my employment was wrongful.

13     50.  As a direct, foreseeable, and proximate result of defendant employer's

14 wrongful termination of my employment in violation of the public policy of the

15 State of California and of the federal law, I have lost and will continue to lose

16 income and benefits, and am entitled to compensatory damages in an amount in

17 excess of 100 million dollars, and because the acts taken towards me were carried

18 out by the managerial employees and the executives acting in a deliberate, cold,

19 callous, malicious, oppressive, and intentional manner in order to injure and

20 damage me, I request the assessment of punitive damages against the defendants in

21 an amount appropriate to punish and make an example of the defendants, and in

22 excess of 25 billion dollars.

23     Wherefore, I pray for relief as set forth below.

24                                  III

25                      THIRD CAUSE OF ACTION

26                       BREACH OF CONTRACT

27     51.  I incorporate by reference paragraphs 1 through 50, inclusive, of this

28 complaint as if fully set forth hereto.

                                  14

52. The contract executed by Focus Infomatics was that my status was a "full-time DSP Qualifier" with a fixed schedule, and is a written contract as defined by California law, and also pursuant to the Electronic Signatures in Global and National Commerce Act (E-Sign Act), 15 USC 7001, et.seq., as well as pursuant to *Uniform Electronic Transaction Act,* California Civil Code Section 1633.7, is enforceable, and is binding on the defendants.

53. Defendants breached that contract by not adhering to the terms of the written contract, but by fraudulently changing my status to a "QA, Sr. ITP" without even notifying me, which they concede is not a "SWAT Executive" position, yet, laid me off by including me under the group "SWAT Executives", who was reportedly the intended target for the layoff. Defendant's personal policies provided that the employees would be treated fairly and in accordance with the applicable federal and individual state laws. However, Focus Infomatics/Nuance did not advertise the job openings for team leader or QA Manager or the Director of US operations at Focus Infomatics which was held by defendant Dorchuck, but recruited by word-of-mouth hiring and nepotism. Defendants failed to treat me in accordance with the defendants' stated policies; and terminated me for giving Title VII complaint, which violates public policy, which the employer is expected to know is a protected activity. Focus Infomatics/Nuance refused to allow me the benefits of the employment contract and to perform under the contract in the agreed on manner, but changed the terms of the employment down the road and without my consent, and to my detriment, and I suffered damages.

54. For the breach of contract, I am entitled to back pay and future wages including the benefits and retirement plans that I would have earned at Focus Infomatics/Nuance for the time period until my retirement, in an amount not yet ascertained, but believed to be in an amount not less than 25 million dollars, and I request an award of punitive damages against the defendants in an amount in

1  excess of 25 billion dollars, the precise amount to be proven at the time of trial,

2  which, the defendant Nuance can afford to pay.

3       Wherefore, I pray for judgment as set forth below.

4                                    IV

5                        FOURTH CAUSE OF ACTION

6       BREACH OF THE COVENANT OF GOOD FAITH AND FAIR

7       DEALING

8       55.  I incorporate by reference paragraphs 1 through 54, inclusive, of this

9  complaint as if fully set forth hereto.

10      56.  Based on the employment relationship I had with Focus

11 Infomatics/Nuance, the expressed and implied promises made by Focus

12 Infomatics/Nuance through their agents in connection with that relationship, and

13 the acts, conduct, and communications resulting in these implied promises, Focus

14 Infomatics/Nuance promised to act in good faith towards me and deal fairly with

15 me, which requires, among other things, that Focus Infomatics/Nuance would

16 similarly treat employees who are similarly situated, and that Focus

17 Infomatics/Nuance would comply with their own representations, rules, policies,

18 and procedures in dealing with me.  However, Focus Infomatics terminated my

19 employment in bad faith, and in an unfair manner, in violation of Focus

20 Infomatics/Nuance's legal duties, just because Ms. Dorchuck was allegedly

21 "jealous" of me!  For unknown reasons, which hopefully will be revealed during

22 discovery in this action, the Administration at Nuance gave her an enormous

23 amount of power to indulge in acts that did not comply with the California law or

24 the State law, but to do as she pleased, and thus ratified her actions after the fact!

25 Focus Infomatics/Nuance breached the covenant of good faith and fair dealing

26 when they refused to abide by their own policies; repeatedly denied the terms of

27 the contract and the agreements they made with me; unfairly prevented me from

28 obtaining the benefits of the contract; treated similarly situated employees

1  differently by imposing different responsibilities on similarly situated employees,

2  and terminated my employment for complaining about Title VII violations, which

3  is a protected activity.

4      57. The defendants' breach of the covenant of good faith and fair dealing

5  was a substantial factor in causing damage and injury to me. As a direct and

6  proximate result of the defendants' unlawful conduct, I have lost substantial

7  employment benefits including lost wages, and other benefits such as health

8  coverage and retirement plans, but believed to be in an amount not less than 25

9  million dollars, and I request an award of punitive damages in an amount in excess

10  of 25 billion dollars, the precise amount to be proven at the time of trial.

11      Wherefore, I pray for judgment as set forth below.

12                                V

13                    FIFTH CAUSE OF ACTION

14                    PROMISSORY ESTOPPEL

15      58. The allegations set forth above in paragraphs 1 through 57 inclusive,

16  are incorporated into this cause of action by reference as if set forth in full herein.

17      59. Defendant employers, through their agents and employees, made certain

18  promises to me, including promotion to a Team Lead position with a salary of

19  $50,000 to $60,000 a year, once the positions are open. However, once there were

20  openings, I was not notified of those openings. As to those that were advertised,

21  when I applied for them, I was rejected, though I was qualified for those positions.

22  In making those promises to me, defendants knew or should have known that

23  those promises would induce me to forego other options and employment

24  opportunities, in reasonable reliance on defendant employers' promises and

25  representations.

26      60. As a proximate result of defendants' failure to perform according to the

27  promises and representations which they made to me and my reliance on those

28  promises to my detriment, I have suffered and will continue to suffer substantial

17

1   losses in compensation all to my damage in a sum exceeding 25 million dollars,

2   the precise amount to be proven at the time of trial, and I request an award of

3   punitive damages in an amount in excess of 25 billion dollars, the precise amount

4   to be proven at the time of trial.

5      Wherefore, I pray for judgment as set forth below.

6                                         VI

7                          SIXTH CAUSE OF ACTION

8              FRAUD, DECEIT, AND CIVIL CONSPIRACY

9      61.   The allegations set forth above in paragraphs 1 through 60 inclusive,

10   are incorporated into this cause of action by reference as if set forth in full herein.

11     62.   The defendants as stated above, made me perform the duties of a Team

12   Lead with the title of "DSP Qualifier" at a pay rate of $18/hour, while my co-

13   workers were hired for the same job duties as "Team Leads" with a salary range of

14   $50,000 to $60,000/year.  Though executed in writing as to what my schedule was

15   and what my job duties were, they had no intention of allowing me to work on my

16   accounts, or comply with the provisions of the Fair Labor Standards Act, but they

17   conspired to assign my work to their friends, so that they could fire me under the

18   guise of "layoff."  The defendants then fraudulently changed my title from "DSP

19   Qualifier" to "QA Sr. ITP" without my notifying me, without my consent, and

20   without providing any evidence of such a change in title though I had requested

21   for the same, so that they could include me under the group of "SWAT

22   Executives" to justify the layoff.  Because the terms of the contract were in

23   writing, I was justified in relying on those promises by the defendants, but did not

24   suspect the fraud or the deceit by the defendants.  The defendants, though they

25   were hiring Team Leaders after my termination, conspired with one another to

26   make my status ineligible for re-hire, and rejected my application for the Team

27   Leader positions without even granting me an interview for those positions.

28

63. The defendants' conduct was outrageous, and based on their fraud, deceit and civil conspiracy to injure me, I suffered loss of income and benefits including health coverage and retirement plans, believed to be in an amount not less than 25 million dollars, and I am entitled to punitive damages to make an example of the defendants, in an amount in excess of 25 billion dollars.

Wherefore, I pray for judgment as set forth below.

VII

SEVENTH CAUSE OF ACTION

INTENTIONAL AND NEGLIGENT INTERFERENCE WITH

CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE

64. The allegations set forth above in paragraphs 1 through 63 inclusive, are incorporated into this cause of action by reference as if set forth in full herein.

65. Each of the individual defendants in their individual capacity fraudulently interfered with the contract that I had with Focus Infomatics as a "DSP Qualifier" for their own ulterior motives, and changed my status to a "QA, Sr. ITP" without my knowledge to make me perform the job duties of the Team Leader without an equivalent pay. They then grouped me under "SWAT Executives" to justify my termination. By making my status "ineligible for re-hire", defendants interfered with the prospective economic advantage that I would have had as a Team Leader. As a result, I sustained losses in income, health coverage and retirement plans, among others. By not allowing me to compete for any of the higher management positions, each of the individual defendants acted with wrongful intent and without justification.

66. Based on the intentional interference of the defendants with my employment and my source of income, I'm entitled to compensatory damages, not yet ascertained, but believed to be in an amount not less than 1 billion dollars, and for punitive damages in an amount not less than 25 billion dollars against each of the individual defendants for their unjustified interference with my employment

and with prospective economic advantage, and the income that I would have earned at Focus Infomatics/Nuance.

Wherefore, I pray for judgment as set forth below.

### VIII

### EIGHTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA LABOR CODE SECTIONS 1050 AND 1052

67. The allegations set forth above in paragraphs 1 through 66 inclusive, are incorporated into this cause of action by reference as if set forth in full herein.

68. California's Labor Code Section 1050 provides that any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a *misdemeanor*. Pursuant to Labor Code Section 1052, any person who knowingly causes, suffers, or permits an agent, superintendent, manager, or employee in his employ to commit a violation of sections 1050 and 1051, or who fails to take all reasonable steps within his power to prevent such violation is guilty of a *misdemeanor*. Section 1054 provides for treble damages for any person aggrieved from violations of Sections 1050 to 1052.

69. After my termination under the guise of a "layoff", the defendants obviously made my status "ineligible for rehire" as evidenced by the fact that in June and July of 2009, when there were openings for Team Lead positions, and when I applied for those positions, I was rejected even without an interview. Therefore, I am entitled to *treble* damages against each of the defendants in an amount in excess of 1 billion dollars.

Wherefore, I pray for judgment as set forth below.

IX

NINTH CAUSE OF ACTION

INTENTIONAL AND NEGLIGENT INFLICTION OF

EMOTIONAL DISTRESS

70. The allegations set forth above in paragraphs 1 through 69 inclusive, are incorporated into this cause of action by reference as if set forth in full herein.

71. The aforementioned acts of the defendants, including those under the First through Eighth causes of action, were wilful and in conscious disregard of my rights, were outrageous, malicious, despicable, and oppressive, and were intended intentionally by each of the defendants to cause vexation, annoyance, anxiety, worry, embarrassment, humiliation, mental anguish, severe and extreme emotional distress, pain and suffering, and were carried out by each of the defendants with a willful and conscious disregard of the probability of causing emotional distress. Because the acts taken towards me were carried out by the defendants acting in a deliberate, cold, callous, malicious, and a very oppressive manner, punitive damages against each of the defendants in an amount appropriate to punish and make an example of the defendants, would be appropriate. When the termination of my employment was in violation of public policy, under California law, I am entitled to damages for negligent infliction of emotional distress too against each of the defendants.

72. Based on the intentional and negligent infliction of emotional distress by the defendants, I am entitled to compensatory damages, not yet ascertained, but believed to be in an amount not less than 1 billion dollars, and for punitive damages in an amount not less than 25 billion dollars against each of the defendants.

Wherefore, I pray for judgment as set forth below.

X

TENTH CAUSE OF ACTION

UNCONSTITUTIONAL OFFSHORING OF CONFIDENTIAL MEDICAL INFORMATION OF THE CITIZENS OF THE UNITED STATES

73. As stated above, defendants Focus Infomatics and Nuance are in the business of offshoring confidential medical information of the citizens of the United States offshore, for transcription services. In doing so, defendants are violating the privacy rights of the patients here in USA, which is guaranteed by the United States Constitution to each of the patients. As the Supreme Court said, the patient's *protected privacy* extends to the doctor's office and the hospitals too. And the Supreme Court also said that by the Constitution, a government is ordained and established *for the United States of America*, and not for countries outside of their limits, and that the Constitution can have *no operation in another country*. Therefore, offshoring confidential medical information of the patients for transcription purposes outside of the United States violates the individual citizens' constitutional right to privacy.

74. An actual controversy exists as to whether offshoring of confidential medical information of citizens of United States violates the right to privacy guaranteed by the United States Constitution to the citizens of the United States. Unless the Court issues an appropriate declaration of rights, the defendants will not stop offshoring confidential medical information of patients here in the United States. Defendants have a mandatory duty not to infringe upon the American citizens' constitutional rights. As there is no plain, speedy, or adequate remedy at law to correct defendants' conduct, a declaration to the effect that *offshoring* of confidential patient information violates the patient's constitutional right to privacy, a preliminary injunction enjoining the defendants from offshoring the medical records of the patients, and a permanent injunction enjoining the defendants from engaging in any activities that would constitute offshoring of the

1 | confidential medical records of the citizens/inhabitants of the United States, would
2 | be proper.
3 |       Wherefore, I pray for judgment as set forth below.
4 |
5 | **RELIEF SOUGHT**
6 |       Based on all the above, I pray for an award of damages <u>against each of the</u>
7 | <u>defendants</u>, for the injuries that I suffered as a direct and proximate result of the
8 | defendants' actions; to include:
9 |
10 | 1.     DAMAGES on the First through Ninth causes of action, as follows:
11 |           1.  General damages in an amount of 1 billion dollars;
12 |           2.  Compensatory damages as allowed by law in an amount of 5
13 | billion dollars;
14 |           3.  Punitive damages in an amount in excess of 25 billion dollars;
15 |           4. An award of prejudgment interest on all the amounts claimed
16 | against each defendant, an award of the costs of suit, including attorney's fees
17 | should I be eligible for in the future; and
18 |           5.  Such other and further relief, as the court deems just and proper.
19 |
20 | 2.     DECLARATORY RELIEF on the Tenth cause of action, as follows:
21 |       A declaration of rights stating that the defendants' offshoring
22 | practices as described in this complaint violate the right to privacy of the citizens
23 | of the United States of America;
24 |
25 | 3.     INJUNCTIVE RELIEF on the Tenth cause of action, as follows:
26 |       An immediate issuance of a temporary restraining order, followed by
27 | a preliminary injunction, and ultimately by a permanent injunction requiring the
28 | defendants to refrain from offshoring confidential medical records of the

23

1 citizens/inhabitants of the United States of America, for transcription purposes or

2 for any other purpose.

3

4                                                    Respectfully submitted,

5

6 Date: November 19, 2011

7

8                                                    _____

9

10                                                   Krishna Reddy

11                                                   Plaintiff, pro se

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

## DEMAND FOR JURY TRIAL

I hereby request a jury trial as provided by Rule 38(a) of the Federal Rules of the Civil Procedure.

Respectfully submitted,

Date: November 19, 2011

Krishna Reddy

Plaintiff, pro se

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Krishna K. Reddy<br>7968 Svl Box<br>Victorville, CA 92395 | From: | Los Angeles District Office<br>255 East Temple Streeet 4th Floor<br>Los Angeles, CA 90012 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2010-09109 | Michael G. Kissamitakis,<br>Investigator | (213) 894-6443 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

| Enclosures(s) | Olophius E. Perry,<br>District Director | (Date Mailed) |
|---|---|---|

cc:  Tim Stevenson
Human Resources Director
NUANCE COMMUNICATIONS INC.
One Wayside Road
Burlington, MA 01803

Joshua B. Wagner
Gordon & Rees LLP
633 West Fifth Street, Suite 4900
Los Angeles, CA  90071

EXHIBIT: 1
PAGE: 26



$ 00.44⁰
02 1A.          AUG 23  2011
000 460 1 956
MAILED FROM ZIPCODE 90012

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
255 E. Temple St., 4th Floor
Los Angeles, CA 90012

**OFFICIAL BUSINESS**

PENALTY FOR PRIVATE USE $300

MK-EU3

92395\$5163  C124

Krishna K. Reddy
7968 Svl Box
Victorville, CA 92395

EXHIBIT: 1
PAGE: 27